UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

VIRGIL ARCHIE,

          Plaintiff,          Case No. 1:23-cv-544

v.                                    Honorable Jane M. Beckering

UNKNOWN DRESCHER et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 8.) The Court previously stayed proceedings in this case and referred it to the Prisoner Civil Rights Litigation Early Mediation Program. (ECF No. 9.) On March 28, 2024, Plaintiff filed a statement seeking to have this matter excluded from early mediation. (ECF No. 14.) In an order (ECF No. 15) entered that same day, the Court removed the matter from early mediation. The Court will lift the stay previously imposed for purposes of mediation in a separate order.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will dismiss Plaintiff's Eighth Amendment claims premised upon the denial of medical attention. Plaintiff's Eighth Amendment conditions of confinement claims remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officers Unknown Drescher, Unknown Walker, Unknown Carrier, and Unknown Speckin.

Plaintiff alleges that on December 19, 2022, the toilet in his cell overflowed after Plaintiff flushed it. (ECF No. 1, PageID.3.) When Defendant Drescher conducted rounds, Plaintiff told him about "the toilet overflowing and spilling raw sewage onto Plaintiff's floor." (*Id.*) Plaintiff "requested the biohazard team for cleanup and further requested maintenance staff and cleaning supplies or to be moved to a different cell with a properly functioning toilet." (*Id.*) Defendant Drescher responded, "No I'm not dealing with any of that today" and continued on his rounds. (*Id.*) Plaintiff repeatedly asked Defendant Drescher for these items during subsequent rounds, to no avail. (*Id.*, PageID.3–4.) Plaintiff contends that at one point, Defendant Drescher responded, "Are you f***ing retarded? Do you not understand what no means?" (*Id.*, PageID.4.)

Plaintiff contends that more raw sewage spilled onto his floor whenever the toilets in the cells adjacent to his cell were flushed. (*Id.*) At one point, the "foul odor of feces and urine on the cell floor" caused Plaintiff to vomit onto the floor. (*Id.*) Plaintiff alleges that he nearly lost consciousness and experienced "chest pains and difficulty in breathing." (*Id.*) Plaintiff "suffered fearful thoughts of dying in prison and felt like he was worthless, something less than human [where] his life meant nothing." (*Id.*) Plaintiff "suffered from further anxiety and severe flashes of

depression [where] he felt like giving up on life." (*Id.*) He submitted medical kites to the healthcare department. (*Id.*)

Subsequently, Plaintiff told Defendant Walker that he had "nearly passed out" and told him about the "feces, vomit[,] and urine overspill from the broken toilet." (*Id.*) Plaintiff "requested medical attention, cleaning supplies[,] or to be moved to a cell with a functioning toilet." (*Id.*) Defendant Walker responded, "This is not my rock." (*Id.*)

Defendant Speckin subsequently took over as the third shift officer, and Defendant Carrier conducted a round during that shift. (*Id.*) Plaintiff told Defendant Carrier "of the urgent need for help regarding the issue of the toilet and the feces, urine[,] and vomit flooding hi[s] cell floor." (*Id.*) Plaintiff also "requested the same medical attention and cleaning supplies and/or an emergent cell move with a functioning toilet." (*Id.*) Defendant Carrier responded, "It's 3rd shift man, 2nd shift should have handed it," and continued on rounds. (*Id.*, PageID.5.)

Plaintiff alleges further that the "raw sewage" flowed outside of his cell, "creating a visible pooling in the hall in front of Plaintiff's door." (*Id.*) Defendant Speckin conducted a round, during which he "stepped around the toxic puddle" and said, "This shit stinks!" (*Id.*) According to Plaintiff, Defendant Speckin ignored "Plaintiff as he continued throughout the night pleading for assistance and help." (*Id.*)

Plaintiff contends that he "was forced to endure this inhumane condition for nearly 24 [hours] subjecting him to use a broken toilet." (*Id.*) Plaintiff's exhibits suggest that the toilet was fixed and the mess was cleaned up at some point during the morning of December 20, 2022. (ECF No. 1-1, PageID.11.) Based on the foregoing, Plaintiff suggests that Defendants violated his Eighth Amendment rights by subjecting him to "extreme[ly] inhumane living conditions" and by failing

to provide medical attention. (ECF No. 1, PageID.5.) Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.6.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff contends that Defendants violated his Eighth Amendment rights by subjecting him to "extreme[ly] inhumane living conditions" and by failing to provide medical attention. (ECF No. 1, PageID.5.) The Court considers each claim further below.

  **A.**  **Conditions of Confinement**

Plaintiff contends that Defendants violated his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement. Specifically, Plaintiff contends that he was subjected to raw sewage that flooded his cell for a period of 24 hours because his toilet malfunctioned. Plaintiff also suggests that the smell of the raw sewage caused him to vomit on his cell floor. Plaintiff asked Defendants for cleaning supplies or to be moved to a new cell to no avail.

With its prohibition of "cruel and unusual punishments," the Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001))). "It is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." *Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021). Allegations that a prisoner was consistently exposed to fecal matter for days are sufficient to state an Eighth Amendment claim. *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment); *Taylor v. Larson*, 505 F. App'x 475 (6th Cir. 2012) (finding a question of fact as to the prisoner's Eighth Amendment claim where the prisoner alleged that he was confined to a cell covered in fecal matter for three days); *DeSpain*, 264 F.3d at 974 (holding that exposure to non-working toilets and other inmates' urine and feces via standing water for thirty-six hours was sufficiently serious). However, the temporary exposure to human waste is not sufficiently serious so as to state an Eighth Amendment claim, particularly where the plaintiff does not allege to have been injured as a result. *See Lamb*, 677 F. App'x at 209–10 (discussing that inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th

6

Cir. 1996) (holding that there was no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but suffered no physical harm); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (finding that a deplorably filthy and patently offensive cell with excrement and vomit was not unconstitutional because conditions lasted only for 24 hours).

That is not to say that exposure to one's own feces is never actionable or that serious, or permanent physical injury is required. In *Parrish v. Johnson,* 800 F.2d 600 (6th Cir. 1986), the Sixth Circuit held that the plaintiffs stated Eighth Amendment violations where two paraplegic prisoners with diminished bladder and bowel control and with little or no ability to clean themselves were "regularly" or "routinely" left sitting in their own feces for significant periods of time, causing risk of infection. *Id*. at 611.

Here, the facts alleged by Plaintiff suggest that the conditions at issue lasted nearly 24 hours, and that the conditions were so bad that he vomited, nearly passed out, and experienced difficulty breathing because of the odor of raw sewage. Although Plaintiff has by no means proven deliberate indifference, taking his allegations as true and in the light most favorable to Plaintiff, the Court concludes that Plaintiff's Eighth Amendment conditions of confinement claims may not be dismissed on initial review.

### B. Denial of Medical Attention

Plaintiff also suggests that Defendants violated his Eighth Amendment rights by denying him medical attention. Plaintiff alleges that the odor of sewage caused him to vomit onto his cell floor. (ECF No. 1, PageID.4.) Plaintiff alleges further that he experienced "chest pains and difficulty in breathing" because of the odor. (*Id.*) He also suggests that the conditions caused him "psychological harm" because he "suffered from further anxiety and severe flashes of depression." (*Id.*)

7

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal

quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff's allegations are simply too conclusory to state Eighth Amendment claims for the denial of medical treatment against Defendants. Here, Plaintiff contends that the odors caused by the sewage from the overflowing toilet caused him to vomit and experience chest pains and difficulty breathing. (ECF No. 1, PageID.4.) While vomiting is "a clear manifestation of internal physical disorder," *see Blackmore*, 390 F.3d at 899, Plaintiff's complaint is devoid of facts suggesting that his vomiting episode rose to the level of a serious medical need. *See, e.g.*, *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (agreeing that an inmate failed to state an Eighth Amendment claim because his complaints of breathing problems, chest pains, and other ailments were "objectively speaking, relatively minor"); *Henderson v. Commonwealth of Va.*, No. 7:07-cv-266, 2008 WL 204480, at *15 (W.D. Va. Jan, 23, 2008) (holding that "brief episodes of vomiting, stomach pain, and difficulty breathing" are "not sufficiently serious to give rise to an

9

Eighth Amendment claim"). Moreover, although Plaintiff alleges in a conclusory manner that Defendants denied his requests for medical attention, Plaintiff does not indicate what symptoms he described to Defendants, and he does not describe what treatment he required. Under these circumstances, Plaintiff fails to allege sufficient facts to show that Defendants disregarded a substantial risk of harm to Plaintiff. Additionally, Plaintiff does not suggest any consequences of not receiving medical treatment. It is "difficult to infer a serious medical need from the facts" as alleged by Plaintiff. *See Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Plaintiff's allegations are too conclusory to show sufficiently serious medical conditions that were "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 899–900.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims premised upon the denial of medical attention.

## Conclusion

Having conducted the review required by the PLRA, the Court will dismiss Plaintiff's Eighth Amendment claims premised upon the denial of medical attention for failure to state a

claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment conditions of confinement claims remain in the case.

An order consistent with this opinion will be entered.


Dated:     April 17, 2024                     /s/ Jane M. Beckering
                                              Jane M. Beckering
                                              United States District Judge